UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| PHILLIP T. CASON, | ) |
|        Plaintiff, | ) |
| v. | )  Civil Action No. 06-0446 (RMC) |
| DISTRICT OF COLUMBIA, *et al.*, | ) |
|        Defendants. | ) |

## MEMORANDUM OPINION

This matter is before the Court on Plaintiff's three motions for summary judgment and Defendant ARAMARK Correctional Service, LLC's motion for summary judgment.[1] For the reasons set forth below, summary judgment will be granted to ARAMARK.

### I. BACKGROUND

At all times relevant to the Complaint, Plaintiff was held either at the District of Columbia's Central Detention Facility ("D.C. Jail") or at the District's Correctional Treatment Facility ("CTF"), which was operated by the Corrections Corporation of America ("CCA") pursuant to a contractual agreement with the District of Columbia Department of Corrections ("DOC").[2] ARAMARK Correctional Services, LLC ("ARAMARK") provided food services at the D.C. Jail,

---

[1] The Court construes the second of Plaintiff's motions, "Plaintiff[']s Opposition Motion to Renew Previously Filed Summary Judgment" [Dkt. #89], as his opposition to ARAMARK's Motion for Summary Judgment [Dkt. #86].

[2] Plaintiff since has been transferred to a federal penitentiary in Pine Knot, Kentucky. *See* Pl.'s Mot. for Summ. J. [Dkt. #84] at 1.

and the Center for Correctional Health Policy and Studies ("CCHPS") provided medical services for inmates detained both at the D.C. Jail and at CTF.

In his original Complaint, Plaintiff alleges that he "was wrongfully diagnosed by medical staff [at the] D.C. Jail" following an injury sustained on March 12, 2005 while he was working a kitchen detail. Compl. at 4; *see id*., Attach. (Grievance No.: 599). He expands his description of the incident in his Motion for Summary Judgment [Dkt. #84] as follows:

> On a Friday of March 2005 Plaintiff was working kitchen detail at the D.C. Jail[.]  On this evening of March while working the tray machine area along with other inmates[,] Plaintiff was ordered by CPL Brooks to manually dip these inmate population serving trays into this rolling b[i]n that was filled with this chemical named lime-away and water. A short time later . . . another inmate while Plaintiff was reaching into this b[i]n dropped maybe 8[] to 10[] trays into it causing a big splash that got [Plaintiff] directly in the face. At that point Plaintiff immediately rinsed out [his] eyes with water and reported the incident to CPL Brooks shift supervisor. At this point CPL Brooks mentioned she would contact the infirmary and [instructed Plaintiff to] return to work.

Pl.'s Mot. for Summ. J. at 2. He further alleges that the next morning he "notice[d] a burning sensation along with irratation [sic] under [his] left eye." *Id*. Notwithstanding his requests for immediate medical attention, he states that he was not taken to the infirmary until midnight at which time he received "a small tube of Petroleum Jelly type of cream [] to put on [his] eye." *Id*. at 3. He states that, by Monday morning, his "left eye was half way close completely shut in pain." *Id*.

A doctor examined Plaintiff on Monday and, according to Plaintiff, "mentioned that [his] left eye was'nt [sic] irratated [sic] by the chemical called lime-away." *Id*. at 3. "[I]nstead [the doctor represented that] Plaintiff had came [sic] into contact with herpes in [his] left eye." *Id*. "Because of this herpes . . . Plaintiff [was] placed into a special housing [unit] contamination cell"

at CTF. *Id*. By the third day of his confinement there, his "eye had become so bad that [he] literally had to beg the doctor to send him to an outside hospital." *Id*. Plaintiff then was taken to Greater Southeast Community Hospital where he underwent treatment for five days. *Id*.; Pl.'s Aff. ¶ 13. Upon his discharge from the hospital, Plaintiff first was returned to a special housing unit contamination cell, and later was released into the general prison population. Pl.'s Aff. ¶ 14.

Plaintiff maintained that the chemical splashed into his eye caused his injury, contrary to "the [D]efendant[s'] . . . coming in contact with herpes theory." Pl.'s Renewed Mot. for Summ. J. [Dkt. #95] at 2. Plaintiff brought this civil rights action under 42 U.S.C. § 1983, and the Court construed Plaintiff's principal claim as the alleged denial of adequate medical care in violation of the Eighth Amendment to the United States Constitution. *See Cason v. D.C. Dep't of Corr.*, 477 F. Supp. 2d 141, 143 (D.D.C. 2007), *appeal dismissed*, No. 06-7203, 2007 WL 2892694 (D.C. Cir. June 15, 2007). "Insofar as Plaintiff alleges that he was 'wrongfully diagnosed by medical staff' at the D.C. Jail . . . the Court assume[d] that Plaintiff also [brought] a negligence claim against the District of Columbia." *Id*. Pursuant to its March 9, 2007 Memorandum Opinion and Order, the Court denied motions to dismiss filed on behalf of CCA and the District of Columbia on the ground that Plaintiff failed to exhaust his administrative remedies, *id*. at 144, and granted their motions to dismiss on the ground that Plaintiff failed to state an Eighth Amendment claim against them. *Id*. at 145. In addition, the Court granted the District's motion to dismiss Plaintiff's common law negligence claim because Plaintiff did not comply with the notice requirements of D.C. Code § 12-309. *Id*. Lastly, the Court dismissed the "Contracted Medical Staff of the Department of

Corrections," later identified as the Center for Correctional Health Policy and Studies, as a party defendant. *Id*. The only remaining defendant, then, is ARAMARK.[3]

## II. DISCUSSION

Under Rule 56 of the Federal Rules of Civil Procedure, "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law[,]" the Court should grant a motion for summary judgment. Fed. R. Civ. P. 56(c). The moving party bears the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (citation and internal quotation marks omitted).

If the moving party meets its burden, the burden then shifts to the non-moving party to establish that a genuine issue as to any material fact actually exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To meet its burden, the non-moving party must show that "the evidence is such that a reasonable jury could return a verdict" in his favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Such evidence must consist of more than

---

[3] Plaintiff moves to reinstate the District of Columbia, CCA, and CCHPS as party defendants. *See* Pl.'s Mot. to Reinstate Defendant[s] [Dkt. #92]. He argues that he "has provided sufficient evidence to prove the elements of his claim by providing medical records which contradict[] the defendants['] assertions" with respect to his diagnosis. *Id*. at 1; *see* Pl.'s Mot. for Summ. J., Attach. (medical records). The record of this case demonstrates that Plaintiff has had an opportunity to oppose the dispositive motions filed on behalf of CCA and the District of Columbia, and has taken no action with respect to amending his complaint to add CCHPS as a party defendant. The Court will deny Plaintiff's motion to reinstate.

mere unsupported allegations or denials; rather, the non-moving party must set forth specific facts showing that there is a genuine issue for trial.  Fed. R. Civ. P. 56(e); *Celotex Corp.*, 477 U.S. at 322 n.3.  If the non-moving party's evidence is "merely colorable" or "not significantly probative," summary judgment may be granted.  *Anderson*, 477 U.S. at 249-50.  "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment."  *Id*. at 248-49.  To be material, the factual assertion must be capable of affecting the substantive outcome of the litigation; to be genuine, the issue must be supported by sufficient admissible evidence that a reasonable trier-of-fact could find for the nonmoving party.  *See id*. at 251.  In the end, the Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  *Id*. at 252.

In support of his Eighth Amendment claim, Plaintiff attaches to his motion copies of medical records "dating back at least (5) years" in an effort to establish that he had no prior "showing of herpes outbreak to left eye."  Pl.'s Mot. for Summ. J. at 5.  Plaintiff "has no other proof other then [sic] whats [sic] before the Court in [his] medical records."  *Id*. at 6.  He turns the Court's attention to pages 26 through 29 of the medical records covering the period from March 15 through March 23, 2005.  *See id*., Attach.[4]

Review of these records shows that, at noon on March 15, 2005, Plaintiff presented with "blisters on the face involving the lower left palpebra and extendig [sic] to left lower jaw area."

---

[4] It does not appear that Plaintiff presents the medical records in any particular order or that he otherwise labels or organizes them.  Of the dozens of pages attached, the Court presumes that the relevant medical records are those 32 consecutively numbered pages identified in the upper right corner as "Chart Summary" on the first page and as "Chart Document" on the following pages, each page bearing the date of July 27, 2007.

*Id*. at 30 (03/15/2005 – Urgent Care: md, Sunday Nwosu).  It appears that Plaintiff was assessed as having shingles; staff prescribed medication and directed Plaintiff's transfer to CTF for placement in a contact isolation unit.  *See id*. at 31.  Prior to his transfer, Dr. Berry evaluated Plaintiff and reported a "stringy discharge of the conjunctiva."  *Id*. at 29 (03/15/2005 – Office Visit: EYE, Marc Berry – MD).  It appears that the doctor's assessment was that Plaintiff suffered from conjunctivitis and herpes zoster.[5]  *Id*.

According to a nursing note upon Plaintiff's transfer to CTF, Plaintiff reported that "he was washing dishes in the kitchen and had accident with the splashing of soapy liquid into his eyes."  *Id*. at 29 (03/15/2005 – Nursing Note, Alexander Ebirgina – LPN).  The note further stated that Plaintiff "[w]as referred to med for housing and for treatment of possible shingles.  Dr[.] [N]g previously aware per Dr[.] Nwosu.  Inmate housed in the contact isolation room."  *Id*.  Drs. Ng and Berry reported office visits at CTF on March 16, 2005.  *Id*. at 28-29 (03/16/2005 – Office Visit: intake note, Phick Ng MD, and 03/16/2005 – Office Visit, Marc Berry – MD).

Nursing notes the next day report that Plaintiff's left eye was swollen and slightly red, with small breaks in the skin around his eyes.  *Id*. at 28 (03/17/2005 – Nursing Note, Martha Brown LPN).  The medical records reflect Plaintiff's report that "his left eye was splashed with limeaway," that he "start[ed] experiencing swelling in the left eye" two days later, and that "Dr. Berry [] made

---

[5]  "Shingles" is defined as:

> An acute viral infection characterized by inflammation of the sensory ganglia of certain spinal or cranial nerves and the eruption of vesicles along the affected nerve path.  It usually strikes only one side of the body and is often accompanied by severe neuralgia.  Also called herpes zoster.

THE AMERICAN HERITAGE DICTIONARY OF THE ENGLISH LANGUAGE (4th ed. 2004).

the assessment to r/o herpes zoster with conjunctivitis." *Id*. at 27 (03/17/2005 – Sick Call, Phick Ng, MD).

On March 18, 2005, Dr. Ng reported that Plaintiff complained of pain, blurred vision, and light sensitivity. *See id*. at 27 (03/18/2005 – Sick Call, Phick Ng, MD). The note read "[l]eft facial/eye herpes zoster," and Dr. Ng planned to send Plaintiff "to gse for evaluation because of pain, blurred vision and [] photophobia."[6] *Id*. Upon Plaintiff's return to CTF from Greater Southeast Community Hospital "for treatment of left eye herpes zoster infection vs chemical conjunctivitis[]," the note read "eye swelling resolved and no discharge." *Id*. at 26 (03/23/2005 – Office visit: Hospital return, Phick Ng. MD). Further, Dr. Ng reported that the "left eye herpes zoster infection vs chemical conjunctivitis" was "resolved." *Id*.

Taken together, Plaintiff's medical records are consistent with his allegations regarding the March 12, 2005 kitchen incident, the herpes diagnosis, his transfers between the D.C. Jail, CTF, and a hospital, and his placement in an isolation cell. These records alone do not establish that the herpes diagnosis was incorrect or that the treatment he received was inadequate, or that the chemical splashed into his eye caused his injury. Plaintiff's predicament worsens, however, in light of the prior dismissal of CCA, the District of Columbia and CCHPS as party defendants.

ARAMARK recalls that the original Complaint set forth only a one-sentence claim that Plaintiff "was wrongfully diagnosed by medical staff [at the] D.C. Jail" following the March 12, 2005 incident. Compl. at 4. It characterizes Plaintiff's claim as one "aris[ing] from his medical care, or lack thereof, after the Lime Away incident." Mem. of P. & A. in Supp. of Both the Opp'n to Pl.'s Mot. for Summ. J. & ARAMARK Corr. Servs., LLC's Mot. for Summ. J. at 3. ARAMARK

---

[6]     The Court interprets "gse" to mean that Greater Southeast Community Hospital.

establishes that it "is not responsible for and does not provide or arrange for the provision of medical care to any prisoner." *Id.*, Attach. ("Shah Decl.") ¶ 8. Further, ARAMARK asserts that it "has no involvement with dish washing," *id.* ¶ 5, which is done "in a room adjacent to the kitchen in an area over which ARAMARK has no control," *id.* ¶ 4, "by inmates under the supervision of the District of Columbia Department of Corrections." *Id.* ¶ 5. Even if the facts as alleged by Plaintiff are true and adequately supported by his evidence, Plaintiff fails to establish that ARAMARK is in any way responsible for the events giving rise to his claim or can be held liable for the harms he has suffered.

### III. CONCLUSION

The Court concludes that Plaintiff fails to meet his initial burden on summary judgment. There remain genuine issues of material fact as to the cause of his eye injury, the accuracy of his diagnosis, and the adequacy of the treatment he received. Nor does Plaintiff show that he is entitled to judgment as a matter of law as against ARAMARK. In its opposition and cross-motion for summary judgment, ARAMARK establishes that it was not responsible for dishwashing or for Plaintiff's medical care. Plaintiff's subsequent submission, at best, is an unsupported denial of ARAMARK's assertions which utterly fails in the face of Defendant's showing. Accordingly, the Court grants summary judgment for ARAMARK. An Order consistent with this Memorandum Opinion is issued separately.

/s/
ROSEMARY M. COLLYER
United States District Judge

DATE: September 26, 2008